IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 12-118 |
| | ) | |
| NEAL THOMAS GIBBS | ) | |

O P I N I O N

DIAMOND, D.J.

On May 1, 2012, a grand jury returned a four-count indictment against Neal Thomas Gibbs ("defendant") charging him with the following: (1) possession with intent to distribute 28 grams or more of crack cocaine on or about October 12, 2011, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii) (Count One); possession with intent to distribute 100 grams or more of heroin on or about October 12, 2011, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(i) (Count Two); possession of firearms in furtherance of drug trafficking crimes on or about October 12, 2011, in violation of 18 U.S.C. §924(c)(1)(A)(i)(Count Three); and possession of a firearm by a convicted felon on or about October 12, 2011, in violation of 18 U.S.C. §922(g)(1) (Count Four).

Presently before the court are the following pretrial motions filed by defendant: (1) motion to suppress evidence (Document No. 24); (2) motion for discovery (Document No. 25); (3) motion to compel the government to provide defendant with a statement of uncharged misconduct evidence (Document No. 26); and (4) motion to sever Count Four from the Trial of Counts One, Two and Three (Document No. 27). The government has filed an omnibus response to defendant's pretrial motions (Document No. 30). For the reasons stated herein, the motions will be granted in part and denied in part.

## Motion to Suppress Evidence (Document No. 24)

On October 11, 2011, Detective Ronald Hiler of the Beaver Falls Police Department applied for a search warrant for Apartment 38 located in a building at 2103 12th Avenue in Beaver Falls, Pennsylvania. The application for the search warrant and accompanying affidavit of probable cause are attached as Exhibit A to defendant's motion to suppress evidence.

According to the affidavit submitted by Detective Hiler, in the months prior to October 2011, he had received numerous complaints from residents in the area of 2103 12th Avenue in Beaver Falls that drug sales were occurring on a daily basis out of Apartment 38 in that building. During the week of September 25, 2011, Detective Hiler met with a reliable confidential informant, who reported that defendant was distributing heroin and crack cocaine from Apartment 38.

During the week prior to October 11, 2011, Detective Hiler again met with the confidential informant who agreed to make a controlled purchase of heroin and/or crack cocaine from defendant. Detective Hiler transported the confidential informant to 2103 12th Avenue, where the informant met with defendant after he exited Apartment 38. The confidential informant gave defendant money in exchange for a plastic baggie of crack cocaine, then he exited the building and returned to Detective Hiler's vehicle. The informant gave Detective Hiler the suspected crack cocaine, which subsequently tested positive. Detective Hiler also conducted surveillance of the residence to verify that drug trafficking activity was occurring there.

Based on the information set forth in Detective Hiler's affidavit, the District Justice in Beaver Falls issued a search warrant for Apartment 38, which was executed on October 12, 2011. According to the Inventory of Seized Property attached to defendant's motion as part of Exhibit A, the police seized $885 in U.S. currency, a digital scale, sandwich baggies, a phone, keys,

2

identification cards and a wallet belonging to defendant, an Access card belonging to Melanie Pavarnik and a black Sentry safe.

Defendant also has attached as Exhibit B to his motion to suppress an application for a search warrant for the black Sentry safe, which includes an accompanying affidavit of probable cause prepared by Detective Hiler.[1] According to the affidavit, in connection with the investigation of defendant for drug trafficking, law enforcement executed a search warrant at 2103 12th Avenue, Apartment 38 on October 12, 2011, as described above. During the course of the investigation, the authorities learned that Jason Alexander, who was a known associate of defendant, was staying at Apartment 36 in the same building, and both apartments were used in the drug operation. During the search of Apartment 38, officers seized a Pennsylvania Department of Public Welfare Access Card issued to Melanie Pavarnik, who was the lease holder of Apartment 36 and the girlfriend of Jason Alexander.

When the officers executed the search warrant at Apartment 38, a member of management for the Beaver County Housing Authority advised them that Jason Alexander was present in Apartment 36, but he was not permitted on Housing Authority property because he was on a defiant trespass list. Two police officers and the management member went to Apartment 36 and made contact with Melanie Pavarnik. Although Ms. Pavarnik told the management member that Alexander was not present, she gave the police officers permission to search the apartment for Alexander. The police found Alexander in Apartment 36 and took him into custody.

The police advised Ms. Pavarnik that their investigation gave them reason to believe that

---

[1] Information relevant to the probable cause determination has been redacted from the affidavit of probable cause attached to defendant's motion to suppress; however, the government has attached to its response a complete, unredacted copy of Detective Hiler's affidavit.

3

items relating to drug trafficking may be located in Apartment 36. Ms. Pavarnik consented to a search of the apartment. In response to the officers' inquiry whether she was aware of anything in the apartment, Ms Pavarnik replied, "the only thing I know about is a safe that is inside my closet." Ms. Pavarnik showed the officers where the safe was located and stated that it belonged to defendant. Ms. Pavarnik also pointed out a pot in the kitchen, which she also stated belonged to defendant. The officers found items inside of the pot that are used in the production and packaging of controlled substances. Without any questioning, Ms. Pavarnik told the officers that there were drugs and possibly a firearm in the safe.

Based on Detective Hiler's affidavit of probable cause, the District Justice in Beaver Falls issued a search warrant for the black Sentry safe, which also was executed on October 12, 2011. According to the Inventory of Seized Property attached to defendant's motion as part of Exhibit B, the safe contained six firearms, ammunition, holsters, keys, a wallet, a digital scale and suspected heroin and crack cocaine.

Defendant argues that the searches of Apartments 36 and 38 violated his Fourth Amendment rights, and the evidence seized must therefore be suppressed.[2] First, regarding

---

[2]The Fourth Amendment right to be free from unreasonable searches and seizures is a personal right and one must establish standing in order to assert that right. See United States v. Padilla, 508 U.S. 77, 81-82 (1993). In order to establish standing, an individual challenging a search must have a reasonable expectation of privacy in the property searched. See Rawlings v. Kentucky, 448 U.S. 98, 104-06 (1980).

Here, defendant asserts that he has standing to challenge the search of Apartment 38 because the affidavit in support of the search warrant alleges that he sold drugs from that apartment. In addition, defendant maintains that he lived in the apartment often enough to have a reasonable expectation of privacy. Defendant likewise asserts that he had a reasonable expectation of privacy in the safe seized from Apartment 36 to complain that his Fourth Amendment rights were violated because the indictment alleges that he possessed the guns and drugs found in the safe. See United States v. Scott, 673 F.Supp.2d 331, 339 (M.D. Pa. 2009) (although the defendant lacked a reasonable expectation of privacy in apartment, and thus lacked standing to challenge sufficiency of the warrant to search the premises, he was not foreclosed from contesting the subsequent search of his laptop computer that was seized from the apartment because he possessed a reasonable expectation of privacy in his personal property). The government (continued...)

4

Apartment 38, defendant asserts that the allegations that he sold drugs from the apartment were too stale to permit issuance of the search warrant, even under the good faith exception to the exclusionary rule promulgated in United States v. Leon, 468 U.S. 897 (1984). According to defendant, the averment that one alleged drug sale occurred at Apartment 38 "within the past week", even combined with claims of prior, undocumented drug sales, provides a warrant that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Defendant further contends that the affidavit supporting the search warrant for the safe found in Apartment 36 is even more "so lacking in indicia of probable cause." In addition, defendant maintains that the search warrant for the safe also is deficient to the extent it relies on anything seized during the alleged illegal search of Apartment 38 because it constitutes "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471 (1963). For reasons explained below, defendant's arguments are without merit, and his motion to suppress evidence will be denied.

Whether probable cause exists is to be determined by a practical and common-sense approach. Illinois v. Gates, 462 U.S. 213 (1983). Gates provides that the inquiry is to be "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. The Supreme Court has emphasized that the reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the

---

does not dispute that defendant had a reasonable expectation of privacy in Apartment 38 or the safe, and the court finds that defendant has standing to assert a violation of his Fourth Amendment rights in this case.

5

evidence viewed as a whole provided a 'substantial basis' for the magistrate's finding of probable cause." Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984). Thus, the warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place. Id. at 733.

In making this determination, this court is to consider "the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). The affidavit supporting a search warrant application "must be read in its entirety and in a common sense and nontechnical manner." United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997). The affidavit need not contain direct evidence linking the place to be searched to the crime. Id. "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." Jones, 994 F.2d at 1056 (internal quotation and citation omitted).

The "[a]ge of the information supporting a warrant application is a factor in determining probable cause." United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993). "If too old, the information is stale, and probable cause may no longer exist." Id. However, age alone does not determine whether information is stale. Williams, 124 F.3d at 420. "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir.1983).

Contrary to defendant's assertion, the information in the affidavit supporting the search warrant for Apartment 38 is not stale, nor was it so lacking in indicia of probable cause as to render

AO 72
(Rev. 8/82)

official belief in its existence entirely unreasonable. With respect to the nature of the crime, the affidavit indicates that Detective Hiler had received numerous complaints from area residents in the several months prior to October 2011 that drug sales were occurring on a daily basis out of Apartment 38. In addition, Detective Hiler met with a reliable confidential informant, who reported that defendant was distributing heroin and crack cocaine from Apartment 38. During the week prior to issuance of the warrant, the confidential informant made a controlled purchase of crack cocaine from defendant after he exited Apartment 38. Further, Detective Hiler conducted surveillance of the residence to verify that drug trafficking was occurring at that location. These factual allegations, along with the reasonable inferences that can be drawn from them, demonstrate that defendant was engaged in drug trafficking, and that evidence of his activities would be found in Apartment 38.

Defendant complains that the allegation that the controlled purchase occurred "within the past week" was too stale to establish probable cause. In United States v. Caple, 403 Fed. Appx. 656, 659 (3d Cir. 2010), our appellate court determined that information contained in an affidavit for the search of the defendant's residence was not stale, where the information indicated that the defendant engaged in drug trafficking over a period of months, and the last controlled transaction took place only weeks before the warrant was issued. The Third Circuit noted in Caple that "courts have upheld determinations of probable cause in trafficking cases involving . . . even longer periods." Id., quoting, United States v. Feliz, 182 F.3d 82, 87 (1st Cir.1999) (holding that information relating to transactions occurring three months before execution of search warrant affidavit was not stale).

In light of this authority, the information in the affidavit for the search of Apartment 38 that

7

the confidential informant made a controlled purchase of crack cocaine from defendant within the week prior to issuance of the warrant was not stale, and it was reasonable for the district justice to conclude that evidence of defendant's drug trafficking would be maintained in the apartment for a period of time. Accordingly, the court finds that there was a "substantial basis" for the district justice's finding of probable cause that evidence of drug trafficking would be found in Apartment 38, and defendant's motion to suppress evidence seized from that apartment will be denied.[3]

Defendant also argues that the allegations in the affidavit in support of the search warrant for the safe seized from Apartment 36 were insufficient to permit issuance of the warrant, even under the good faith exception to the exclusionary rule. This argument also fails.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court established the good faith exception to the exclusionary rule and held that evidence should not be suppressed if it was obtained in objectively reasonable reliance on a subsequently invalidated search warrant. Id. at 922. While the Leon court affirmed that a warrant issued by a magistrate normally suffices to establish that an officer has acted in good faith in conducting the search, it emphasized that "the officer's reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id.

The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 923, n.23. There are four situations in which an officer's reliance on a warrant would not be

---

[3]Because we uphold the district justice's finding that probable cause existed to issue a search warrant for Apartment 38, we reject defendant's argument that the search warrant for the safe from Apartment 36 is deficient to the extent it relies on anything seized during the alleged illegal search of Apartment 38 because it constitutes "fruit of the poisonous tree" subject to suppression under Wong Sun v. United States, 371 U.S. 471 (1963).

8

reasonable and would not trigger the good faith exception: (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. Id. at 923; see also United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001).

Here, defendant claims the third situation is at issue, arguing that the search warrant for the safe seized from Apartment 36 was based on an affidavit so lacking in indicia of probable cause as to render the police officers' belief in its existence entirely unreasonable. According to defendant, the assertion that Jason Alexander, who was a known associate of defendant, was inside of Apartment 36, even when combined with Melanie Pavarnik's consent to search the apartment does not give rise to a reasonable belief in the existence of probable cause to open the safe.

Contrary to defendant's position, the affidavit in support of the search warrant for the safe seized from Apartment 36 contained additional, critical information that is more than sufficient to establish probable cause. As stated, Ms. Pavarnik, who was the lease holder of Apartment 36 and the girlfriend of Jason Alexander, consented to a search of the apartment. The police advised Ms. Pavarnik that their investigation revealed that items related to drug trafficking may be located in Apartment 36 and asked whether she was aware of anything in the apartment. Ms. Pavarnik replied, "the only thing I know about is a safe that is inside my closet." Ms. Pavarnik showed the officers where the safe was located and stated that it belonged to defendant. Ms. Pavarnik also pointed out a pot, which she also stated belonged to defendant. The officers found items inside of

9

the pot that are used in the production and packaging of controlled substances. Without any questioning, Ms. Pavarnik told the officers that there were drugs and possibly a firearm in the safe.

Given all of the information provided in the affidavit, this court finds that there was a substantial basis for the district justice to conclude that evidence of drug trafficking would be found in the safe. It follows that the affidavit in support of the search warrant for the safe contained the necessary indicia of probable cause, and the court rejects defendant's argument to the contrary. Accordingly, defendant's motion to suppress evidence seized from the safe will be denied.

## Motion for Discovery (Document No. 25)

Defendant has filed a motion seeking discovery of various categories of information, including inter alia requests for exculpatory and impeachment material.

Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and materials available pursuant to the "Brady doctrine."[4] Id.

In response to defendant's discovery motion, the government has acknowledged its obligations under Rule 16 and the Brady doctrine. Accordingly, defendant's discovery motion and request for exculpatory evidence will be granted in part, and the government shall turn over all

---

[4]Brady v. Maryland, 373 U.S. 83 (1963).

10

information falling under Rule 16(a) and the Brady doctrine to the extent that any such information exists and has not already been provided to him. To the extent defendant's discovery motion requests information that does not fall within the scope of Rule 16(a), Brady or the Jencks Act, those requests will be denied.

As to the timing of the required disclosures, it is well settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. In contrast, Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983). Therefore, should the government discover the existence of any exculpatory Brady evidence, such evidence shall be disclosed to defendant forthwith. As to impeachment material, the Third Circuit encourages adherence to the long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting Higgs, 713 F.2d at 44, n.6). Given the nature of this case, disclosure of Brady impeachment material no later than ten days prior to trial is sufficient to protect defendant's due process rights and to ensure that trial delay is avoided, and an order will be entered to that effect.

### Motion to Compel the Government to Provide Defendant With a Statement of Uncharged Misconduct Evidence (Document No. 26)

Defendant seeks an order compelling the government to provide him with a statement of the nature, dates and places of occurrences of any offenses or acts of misconduct other than those set forth in the indictment which the government intends to offer in evidence at trial under Federal Rule of Evidence 404(b) and/or evidence of any prior convictions pursuant to Rule 609.

11

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purposes enumerated in the rule. It provides that on request by a defendant in a criminal case, the prosecutor "must provide reasonable notice of the general nature of any such evidence that [the government] intends to offer at trial and do so before trial. . . ." Fed.R.Evid. 404(b)(2). According to the commentary to Rule 404(b), other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case. However, courts that have considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days).

The government's response indicates that it has not yet identified the specific uncharged misconduct evidence it will seek to introduce at trial under Rule 404(b), but it has provided defendant with a copy of his criminal record, which it will use as impeachment material under Rule 609 if defendant chooses to testify at trial.[5] To the extent the government decides to introduce Rule 404(b) evidence, the court will enter an order directing the government to provide defendant with the required notice ten days before trial.

---

[5]Rule 609(a)(1)(b) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment. The only notice requirement in Rule 609 is that the government must provide "reasonable written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b).

12

## Motion to Sever Count Four
## From the Trial of Counts One, Two and Three (Document No. 27)

Defendant has moved for "a severance that might more accurately be called a 'bifurcation'" of Count Four of the indictment, which charges him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1), from the trial of Counts One, Two and Three. See Document No. 27, ¶4. The government responds that the bifurcation procedure that defendant promotes is not necessary here, and his motion for severance of Count Four should be denied. For the following reasons, the court will deny defendant's motion to the extent he seeks to sever Count Four from the other three counts of the indictment for trial, but will grant his request for bifurcation.

Federal Rule of Criminal Procedure 14 deals with relief from prejudicial joinder. According to Rule 14(a), if the joinder of offenses in an indictment appears to prejudice a defendant, the court may order separate trials of counts or provide any other relief that justice requires. A motion for severance under Rule 14 rests in the sound discretion of the district court. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981). One who claims improper joinder under Rule 14 must demonstrate clear and substantial prejudice.[6] Id. Mere allegations of prejudice are not enough, and it is insufficient to establish that severance would improve the defendant's chance of acquittal. Id.

Defendant's motion does not allege, let alone demonstrate, clear and substantial prejudice

---

[6]The kinds of prejudice that may result from joinder of offenses are: (1) the jury may cumulate evidence of the separate crimes; (2) the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt; and (3) the defendant may become embarrassed or confounded in presenting different defenses to the different charges. United States v. Dileo, 859 F. Supp. 940, 944 (W.D. Pa. 1994), quoting, Blunt v. United States, 404 F.2d 1283, 1288 (D.C. Cir. 1968).

13

sufficient to justify severance under Rule 14. Thus, defendant's motion will be denied to the extent he seeks to sever Count Four of the indictment from the trial of Counts One, Two and Three. However, the court agrees with defendant that a bifurcated trial is appropriate in this case.

The Third Circuit Court of Appeals has held that bifurcation may be appropriate to address the concern that introducing evidence of a defendant's criminal record in order to prove a felon in possession charge would prejudice him during the jury's deliberation on the other counts. See United States v. Joshua, 976 F.2d 844, 848 (3d Cir. 1992) (abrogated on other grounds by Stinson v. United States, 508 U.S. 36 (1993)); see also, United States v. McCode, 317 Fed. Appx. 207, 212 (3d Cir. 2009) (approving bifurcation of felon in possession counts from robbery related counts). In Joshua, the defendant was charged with armed bank robbery, weapons charges in connection with the bank robbery and possession of a firearm by a convicted felon. The defendant moved to sever the felon in possession count from the remaining counts for trial, fearing that the evidence of his prior criminal conviction might unfairly influence the jury's decision on the other counts. The district court denied the defendant's motion to sever, but ordered a bifurcated trial during which the jury first heard evidence and deliberated concerning the robbery-related counts, and then heard evidence of the defendant's criminal record and deliberated concerning the felon in possession count. The Third Circuit determined that this procedure employed by the district court "strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy." Joshua, 976 F.2d at 848.

Here, defendant asserts that "there is no legitimate purpose or need, relevant to the trial of Counts One, Two and Three, for the government to try Count Four (felon-in-possession) at the same time as the remaining counts." See Document No. 27, ¶5. Defendant maintains that the

AO 72
(Rev. 8/82)

existence of his prior conviction is not a factual issue in any meaningful sense, and Counts One, Two and Three charge all relevant conduct with respect to whether he committed the charged drug offenses and possessed firearms in furtherance of those charges. Id.

Defendant's concerns are legitimate. Evidence of his prior felony conviction, which is admissible at Count Four, would be prejudicial to defendant in the trial of Counts One, Two and Three. In addition, the elements of Counts One, Two and Three involving the drug offenses and possession of firearms in furtherance thereof are distinct from those that must be proved by the government in connection with the felon in possession charge at Count Four. For these reasons, we find it appropriate to bifurcate the trial such that the jury first will hear evidence related to Counts One, Two and Three of the indictment and, after reaching a verdict on those counts, will thereafter hear evidence concerning Count Four.

An appropriate order will follow.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

Date: November 28, 2012

cc: Barbara K. Swartz
Assistant U.S. Attorney

W. Penn Hackney
Assistant Federal Public Defender

AO 72
(Rev. 8/82)